**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **GALDERMA LABORATORIES, L.P.** | § | |
| | § | |
|    **Plaintiff** | § | |
| | § | |
| **vs.** | § | **CASE NO. 4:20-CV-00185-P** |
| | § | |
| **GERMANTOWN PROFESSIONAL** | § | |
| **PHARMACY, LLC d/b/a** | § | |
| **GERMANTOWN PROFESSIONAL** | § | |
| **PHARMACY & COMPOUNDING,** | § | |
| **and HOSSEIN ZAMANI,** | § | |
| **INDIVIDUALLY** | § | |
| | § | |
|    **Defendants** | § | |

---

**DEFENDANT HOSSEIN ZAMANI'S MOTION TO DISMISS FOR LACK OF
PERSONAL JURISDICTION AND BRIEF IN SUPPORT**

---

Daniel C. Steppick
State Bar No. 00791732
Dan@LacyMalone.com
Zshoná A. Workman
State Bar No. 24099397
Zshona@LacyMalone.com
**LACY MALONE STEPPICK
RYDER & MENEFEE, PLLC**
303 Main Street, Suite 200
Fort Worth, Texas 76102
Telephone:  (817) 349-8409
Facsimile:  (817) 349-8006

**ATTORNEYS FOR DEFENDANTS**

## TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................................1

II.    ZAMANI'S JURISDICTIONAL CHALLENGE IS TIMELY ...............................................2

III.   STATEMENT OF FACTS .............................................................................................6

IV.    LEGAL STANDARDS FOR PERSONAL JURISDICTION..................................................9

V.     PERSONAL JURISDICTION ANALYSIS......................................................................10

      A.     Galderma Has Failed to Establish that Zamani is
           Subject to General or Specific Jurisdiction in this Forum ..........................10

      B.     Galderma Fails to Establish a Prima Facie Showing of
           General Jurisdiction Over Zamani ..............................................................11

      C.     Galderma Fails to Establish a Prima Facie Showing of
           Specific Jurisdiction Over Zamani..............................................................12

      D.     Zamani is Not Subject to the Forum Selection Clause in the
           Terms and Conditions Because He is Not a Party to the Agreement .........15

      E.     The Corporate/Fiduciary Shield Doctrine Precludes Personal Jurisdiction over
           Zamani Based on Transactions Conducted by and for Germantown .........16

VI.    CONCLUSION..........................................................................................................19

CERTIFICATE OF CONFERENCE...........................................................................................20

CERTIFICATE OF SERVICE ..................................................................................................20

# <u>TABLE OF AUTHORITIES</u>

**CASES**

*Access Telecom, Inc. v. MCI Telecomms., Corp.*
   197 F.3d 694 (5th Cir. 1999) ...................................................................................12

*Adams v. Unione Mediterranea Di Sicurta*
   364 F.3d 646 (5th Cir. 2004) ...................................................................................16

*Blueskygreenland Envtl. Sols., LLC v. Rentar Envtl. Sols., Inc.*
   2011 WL 6372842 (S.D. Tex. Dec. 20, 2011) ..........................................................6

*Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cnty.*
   137 S. Ct. 1773 (2017) ..............................................................................................9

*Burchfield v. Stein*
   2002 WL 318341 (N.D. Tex. Feb. 27, 2002) ..........................................................15

*Burger King Corp. v. Rudzewicz*
   471 U.S. 462 (1985) ................................................................................................16

*Daimler AG v. Bauman*
   571 U.S. 117 (2014) ..................................................................................................9

*Dell Mktg., L.P. v. Incompass IT, Inc.*
   771 F. Supp. 2d 648 (W.D. Tex. 2011) ....................................................................3

*EEOC v. Waffle House, Inc.*
   534 U.S. 279 (2002) ................................................................................................16

*Haynsworth v. The Corporation*
   121 F.3d 956 (5th Cir. 1997) ...................................................................................15

*Hedges v. Trailer Express, Inc.*
   2015 WL 402857 (W.D. Okl. Jan. 29, 2015) ...........................................................6

*Helicopteros Nacionales de Columbia, SA. v. Hall*
   466 U.S. 408 (1984) ................................................................................................12

*Johnston v. Multidata Sys. Int'l Corp.*
   523 F.3d 602 (5th Cir. 2008) .....................................................................................9

*Marathon Oil Co. v. A.G. Ruhrgas*
   182 F.3d 291 (5th Cir. 1999) ...................................................................................13

*McDermott v. FedEx Ground Systems, Inc.*
    520 F.Supp. 2d 254 (D. Mass. 2007)....................................................................6

*Moncrief Oil Int'l, Inc. v. OAO Gasprom*
    481 F.3d 309 (5th Cir. 2007) .........................................................................13

*Organic Metals v. Aquasium Techs., Ltd.*
    2004 WL 718960 (N.D. Tex. Apr. 2, 2004) ...................................................17

*Sangha v. Navig8 Ship Management Private Ltd.*
    882 F.3d 96 (5th Cir. 2018)...........................................................................10

*Stearman v. Comm'r of Internal Revenue*
    436 F.3d 533 (5th Cir.2006)............................................................................3

*Stuart v. Spademan*
    772 F.2d 1185 (5th Cir. 1985)..........................................................................6

*Sunday Riley Modern Skin Care, L.L.C. v. Maesa*
    2013 WL 5231860 (S.D. Tex. Sept. 12, 2013) ...............................................16

*TecLogistics, Inc. v. Dresser-Rand Group, Inc.*
    527 S.W.3d 589 (Tex. App.-Houston [14th Dist.] 2017, no pet.) .......................18

*Walden v. Fiore*
    571 U.S. 277 (2014) ....................................................................................10

## RULES

FED. R. CIV. P. 12(b) .............................................................................................5

FED. R. CIV. P. 12(b)(2).........................................................................................4

FED. R. CIV. P. 12(h) .............................................................................................2

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, Defendant Hossein "Hoss" Zamani ("Zamani"), by and through counsel of record, hereby moves the Court to enter an Order dismissing all claims brought against him by Plaintiff Galderma Laboratories, L.P. ("Galderma").

## I.     <u>INTRODUCTION</u>

1.      This case involves a billing dispute between Galderma and Defendant Germantown Professional Pharmacy, LLC d/b/a Germantown Professional Pharmacy & Compounding ("Germantown" or "Pharmacy").  The Pharmacy, which ceased operations in Fall 2019, was a small independent pharmacy based in Germantown, Maryland, and was owned by Zamani, who is a resident and citizen of the District of Columbia.

2.      Galderma offers a "CareConnect" program which is run by third party "administrator," McKesson Corporation and its subsidiaries and/or affiliates.  According to Galderma, the CareConnect program allows participating pharmacies, such as Germantown, to obtain reimbursement of certain costs associated with purchasing and dispensing Galderma products to uninsured, underinsured, or commercially insured patients with prescriptions. (*See* Plaintiff's First Amended Complaint (#30) at ¶¶ 9-11.) Galderma asserts this "CareConnect" program is governed by the CareConnect Card Terms and Conditions, that Germantown breached an agreement with Galderma, and fraudulently sought and received reimbursements thereunder to which it was not entitled. (*Id. at* ¶¶ 9-11, 16-19.) Galderma, in an effort to expand the scope of the case, included Zamani as a defendant in his individual capacity.

3.     Galderma has failed to establish personal jurisdiction over Zamani in this Court. Zamani respectfully asks the Court to dismiss the claims against him for lack of personal jurisdiction, which requires dismissal under Federal Rule of Civil Procedure 12(b)(2).

4.     Galderma has failed to plead a prima facie case of personal jurisdiction over Zamani in three ways.  First, Galderma has not alleged any well pleaded facts demonstrating that it had any business dealings or interactions with Zamani in his individual capacity. Galderma also failed to demonstrate that Zamani has any contacts with the state of Texas, either generally or with respect to the claims in this case.

5.     Second, Galderma's First Amended Complaint ("Amended Complaint") ignores the fact that Galderma had no contract with Zamani and that Zamani never sought a reimbursement from Galderma in his individual capacity, nor received any payment from Galderma for his personal benefit.

6.     Third, Galderma's attempt to establish personal jurisdiction over Zamani through a forum selection clause in the CareConnect Card Terms and Conditions fails because Zamani, in his individual capacity, is not a party to that agreement. The Corporate/Fiduciary Shield Doctrine prevents Germantown's contractual agreements from being imputed to Zamani as an individual.  As a result, this Court lacks personal jurisdiction over Zamani.

## II.     ZAMANI'S JURISDICTIONAL CHALLENGE IS TIMELY

7.     Zamani's post-answer challenge to personal jurisdiction is timely filed.  Rule 12(h) of the Federal Rules of Civil Procedure provides, in pertinent part, that a party waives challenges to personal jurisdiction and venue <u>only</u> if he fails to make it by a Rule 12 motion <u>or fails to include it in a responsive pleading</u>. *See* FED. R. CIV. P. 12(h).  Raising the issue of personal jurisdiction in a responsive pleading, such as an answer, preserves the right to contest

personal jurisdiction in a separate motion. *See Dell Mktg., L.P. v. Incompass IT, Inc.,* 771 F. Supp.2d 648, 654 (W.D. Tex. 2011).  Defendants' Original Answer denied the facts upon which Galderma based jurisdiction in Texas. (*See* Defendants' Original Answer (#11) at ¶¶ 4 and 7.) Defendants' current Amended Answer denies Galderma's pleaded allegations of personal jurisdiction and raises lack of personal jurisdiction and the corporate shield doctrine as defenses.  (*See* Defendants' Third Amended Answer (#35) at ¶¶ 4, 7, 49, 50 and 70.))

8.    The Western District of Texas has applied Rule 12(h) to allow a post-answer challenge to personal jurisdiction.  In *Dell Mktg., L.P. v. Incompass IT, Inc.*, the court allowed Defendant Incompass to file a motion to dismiss for lack of personal jurisdiction after filing its answer. *See Dell Mktg.*, 771 F. Supp.2d at 653-54.  The Court permitted the jurisdictional challenge because in its answer, Incompass denied some of Dell's jurisdictional allegations and raised lack of personal jurisdiction as an affirmative defense.  *Id.* at 650.  The Court reasoned that Incompass put Dell on notice in its answer that "Incompass might challenge personal jurisdiction." *Id.* at 654. Incompass's later filed motion did not, therefore, unfairly surprise or prejudice Dell. *Id.* Additionally, the Court emphasized "there is no principled reason to distinguish between a motion to dismiss based on lack of personal jurisdiction filed one day before the answer, concurrent with the answer, or one day after the answer, provided the issue is raised in the 'first significant defensive move.'" *Id.* at 654.

9.    The Fifth Circuit has applied a similar interpretation.  In *Stearman v. Comm'r of Internal Revenue*, the Court relied upon Rule 12(h) to permit the government to file a Rule 12(b) motion nine months after it filed a responsive pleading. *See Stearman v. Comm'r of Internal Revenue,* 436 F.3d 533, 536 n. 6 (5th Cir.2006).  The court rejected Plaintiff's

argument that the government waived its right to file a 12(b) motion by filing an answer, stating that plaintiff's argument was not consistent with Rule 12(h) and "lacks merit." *Id.*

10.     Zamani successfully preserved his personal jurisdiction objections. Defendants' Original Answer denied the allegations upon which Galderma bases personal jurisdiction in Texas.  (*See* Defendants' Original Answer (#11) at ¶¶ 4 and 7.)   In Defendants' First, Second, and Third Amended Answers, leave for which Plaintiff affirmatively stated it was unopposed, Zamani again denied Galderma's allegations of personal jurisdiction and raised lack of personal jurisdiction and corporate/fiduciary shield doctrine as affirmative defenses.  (*See* Defendants' First Amended Answer (# 31) at ¶¶ 4, 7, 43, 44, and 64; Defendants' Second Amended Answer (attached to #32) at ¶¶ 4,7,49, 50, and 70; Defendants' Third Amended Answer (#35) at ¶¶ 4, 7, 49, 50, and 70) [1] ( *See* Defendants' Unopposed Motions to Amend its Answer (# 28, 32 and 33.))

11.     Much like the *Dell Mktg.* defendants, Zamani's Original and Amended Answers put Galderma on notice that Zamani contested personal jurisdiction and might raise personal jurisdiction as a defense. Galderma cannot in good faith claim to be surprised or prejudiced by Zamani's 12(b)(2) motion filed subsequent to his Original and Amended Answers.

12.     It is true that Rule 12(b) states, "A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed." FED. R. CIV. P. 12(b).  Galderma will likely insist that the court interpret this to mean that any 12(b) motion filed after a responsive pleading is untimely and is therefore invalid.  Such an interpretation, however,

---

[1] Galderma did not oppose Defendants' Motion for Leave to file their First, Second or Third Amended Answers. Defendants' Amended Answers raised lack of personal jurisdiction as affirmative defenses and denied jurisdictional facts.  *See Id.*

would lead to unusual and unintended results when applied in conjunction with Rule 12(h). For example, if a defendant asserted personal jurisdiction in its answer the defense would be preserved according to Rule 12(h), however, the defendant would be unable to file a motion to advance that defense, despite preserving the objection, due to the language of Rule 12(b). *See Dell Mtkg,* 771 F. Supp.2d at 652-53.

13.     The Western District in *Dell Mtkg.* suggested that a more reasonable interpretation of Rule 12(b) comes from reading earlier versions of the Rule. *Dell Mtkg.,* 771 F. Supp.2d at 653.   Former Rule 12(b) stated in part, "Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may <u>at the option of the pleader</u> be made by motion. . . ."   FED. R. CIV. P. 12(b) (2007) (amended 2009) (emphasis added).   The rule went on to list personal jurisdiction as one of the 12(b) defenses that may be asserted in a separate motion.   *Id.*   According to *Dell Mktg.,* the former version of Rule 12(b) suggests an interpretation of 12(b) that does not clash with the waiver provisions found in Rule 12(h):

> All defenses must be included in a responsive pleading, except the defenses listed in 12(b)(1)-(7), which may instead be made by motion alone.  However, if these defenses are asserted by motion alone, they must be asserted prior to the filing of a responsive pleading. In either case, these defenses must be asserted at the first opportunity.

*Dell Mtkg.,* 771 F. Supp.2d at 653.   Rules 12(b) and 12(h) work in conjunction with one another in a manner that mitigates bizarre or unintended results.

14.     Rules 12(b) and 12(h) dictate that Zamani, by preserving the issue of personal jurisdiction in Defendants' Original and Amended Answers, is entitled to file a 12(b)(2)

motion challenging personal jurisdiction subsequent to filing an answer under applicable law, and therefore, Zamani's Motion to Dismiss is timely.

15.     The *Dell Mktg.* Court's logical interpretation of Rules 12(b) and 12(h) has been approved and adopted by many district courts under similar factual circumstances to hold that a defendant had not waived a post-answer challenge to personal jurisdiction.  *See e.g. Blueskygreenland Envtl. Sols., LLC v. Rentar Envtl. Sols., Inc.,* 2012 WL 1600457 at *4 (S.D. Tex. May 7, 2012) (noting that defendants preserved their affirmative defense of personal jurisdiction in their answers); *Hedges v. Trailer Express, Inc.,* 2015 WL 402857 at *3 (W.D. Okl. Jan. 29, 2015) (following *Dell Mktg.* and holding that defendants' assertion of personal jurisdiction as a defense in its answer satisfied both Rules 12(b) and 12(h) and, therefore, Defendant's Motion to Dismiss was timely).

16.     In *McDermott v. FedEx Ground Systems, Inc.*, the court found that defendants had "effectively raised the defense" of personal jurisdiction by only "specifically denying Plaintiff's allegations of jurisdiction in the Second Amended Complaint."  *McDermott v. FedEx Ground Systems, Inc.*, 520 F.Supp.2d 254, 256-57 (D. Mass. 2007). The Defendants did not raise lack of personal jurisdiction as a defense. *Id.* Likewise, Defendant Zamani preserved his defense of lack of personal jurisdiction by denying Galderma's jurisdictional facts in his Original Answer and additionally asserting lack of personal jurisdiction and the corporate/fiduciary shield doctrine as affirmative defenses in his Amended Answers. Defendant Zamani's Motion to Dismiss is timely.

### III.     <u>STATEMENT OF FACTS</u>

17.     Zamani has submitted a declaration in support of his jurisdictional challenge to the complaint under Rule 12(b)(2) as permitted by *Stuart v. Spademan*, 772 F.2d 1185, 1192

(5th Cir. 1985) (the court may consider "affidavits and documentary evidence filed by the parties" when evaluating jurisdiction). (*See* App.003-006 (Declaration of Hossein "Hoss" Zamani)) ("Zamani Declaration").  Zamani, who resides in the District of Columbia, was a licensed pharmacist in Maryland from 2006 to 2019 and in the District of Columbia from 2007 to 2020.  (App. 003, ¶ 2.) Zamani no longer practices as a pharmacist and the Pharmacy ceased operations on October 17, 2019.  (*Id.* at ¶¶ 3-4.)  Zamani has no residence, no office, and personally performs no work in Texas, (App. 004, ¶¶ 6-8.) Germantown's only location was in Germantown, Maryland. (App. 004, ¶ 10.) The Pharmacy did not have, and never had, an office in Texas, nor did it employ any workers in Texas.  (*Id.* at ¶ 9.) Germantown never purchased Galderma products directly from Galderma in Texas, but rather from various wholesalers. (*Id.* at ¶¶ 13-14.)

18.     Galderma alleges the CareConnect program is governed by Galderma's CareConnect Terms and Conditions. (Am. Compl., ¶ 13.)  These Terms and Conditions are allegedly stated in an unsigned "card" prepared solely by Galderma and posted on Galderma's website. The terms are applicable to <u>patients</u> <u>and</u> <u>participating pharmacies</u>, such as Germantown. (Am. Compl., ¶ 11; App. 021-023 (CareConnect Terms and Conditions).) Nothing in the CareConnect Terms and Conditions addresses a pharmacist in his individual capacity.

19.     Zamani has never negotiated, agreed to, signed, or entered into an agreement on CareConnect's Terms and Conditions in his individual capacity.  (App. 005, ¶¶ 16-17 (Zamani Declaration).)  In addition, Germantown never purchased product directly from Galderma in Texas. (App. 004, ¶¶ 13-14.) The Pharmacy dealt with sales representatives for two different wholesalers and received Galderma products shipped from McKesson located

in Ruther Glen, Virginia, and from AmerisourceBergen Corporation located in Chesterbrook, Pennsylvania. (*Id.*)

20.     Likewise, the Pharmacy never requested payment or reimbursements from Galderma in Texas, but rather from third-party administrator RxC Acquisition Company d/b/a RxCrossroads by McKesson, located in Scottsdale, Arizona. (App. 005-006, ¶¶ 18-21.) Neither the Pharmacy or Zamani dealt directly with Galderma as part of the CareConnect program. (*See id.*)

21.     The Amended Complaint vaguely identifies Galderma's administrator of the CareConnect program as "McKesson," but fails to explain that all reimbursements under the CareConnect program are handled by McKesson, not Galderma. (Am. Compl., ¶ 23.) The CareConnect Terms and Conditions provide a hyperlink to the McKesson LoyaltyScript Terms and Conditions ("LoyaltyScript Agreement"), which by its terms governs the submission and payment of claims for reimbursements under the CareConnect program. (App. 023, ¶ 2; App. 024-027 (LoyaltyScript Agreement).) The LoyaltyScript Agreement is administered by a McKesson Corporation subsidiary, "RxCrossroads," located in Arizona. (*Id.* at ¶ 1)

22.     Zamani had no communication or interaction directly with Galderma in Texas with respect to the CareConnect program, in any capacity. (App. 006, ¶ 21.) Any claims for reimbursements under the CareConnect program were directed to McKesson/RxCrossroads, and any reimbursements received by Germantown were from McKesson/RxCrossroads. (App. 005-006, ¶¶ 18-21.)

23.     No reimbursement claim was made by and no money was paid to Zamani in his individual capacity. (App. 006, ¶ 22.) Zamani had no contacts with Texas.

### IV.   <u>LEGAL STANDARDS FOR PERSONAL JURISDICTION</u>

24.    "A 'federal court sitting in diversity may assert personal jurisdiction if (1) the forum state's long-arm statute applies, as interpreted by the state's courts; and (2) if due process is satisfied under the Fourteenth Amendment to the United States Constitution.'" *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (citation omitted).   Because Texas has a long arm statute that is coextensive with the limits of due process, the Court need only determine if the assertion of personal jurisdiction satisfies due process.   *Id.*   "Federal due process requires a plaintiff to prove: (1) that the non-resident purposely availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the state; and (2) that the exercise of jurisdiction does not offend 'traditional notions of fair play and substantial justice.'" *Id.*

25.    Minimum contacts can give rise to either general or specific jurisdiction.   *Id.*   A court with general jurisdiction "may hear *any* claim against the defendant, even if all the incidents underlying the claim occurred in a different [forum]." *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cnty.*, 137 S. Ct. 1773, 1780 (2017).   A court may exercise general jurisdiction when defendants' affiliations with the forum "are so continuous and systematic as to render them essentially at home in the forum." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (citations omitted).   For an individual, "the paradigm forum for the exercise of general jurisdiction is the individual's domicile."   *Id.* at 137.   The Fifth Circuit has regularly held that "[t]he 'continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum.'" *Johnston*, 523 F.3d at 609-10 (citation omitted).

26.    Specific jurisdiction differs in that such jurisdiction may exist "over a nonresident defendant whose contacts with the state are singular or sporadic only if the cause of action asserted

arises out of or is related to those contacts." *Sangha v. Navig8 Ship Management Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018) (citations omitted).  That is, "when a nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Id.*

27.    The specific jurisdiction inquiry "focuses on the relationship among the defendant, the forum and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014) (citation omitted). "The proper question is not whether [plaintiff] experienced an injury or effect in a particular location, but whether [defendant's] conduct connects it to the forum in a meaningful way." *Sangha*, 882 F.3d at 103-104; *see also Walden,* 571 U.S. at 290.

## V.    PERSONAL JURISDICTION ANALYSIS

### A.    Galderma Has Failed to Establish that Zamani is Subject to General or Specific Jurisdiction in this Forum.

28.    Galderma, in its Amended Complaint, fails to make a clear assertion of either general or specific jurisdiction over Zamani in Texas.  First, Galderma claims that Zamani, "conducts" or "is engaged in business in Texas by contracting with a Texas entity and by purchasing that Texas entity's products, some of which come from Texas distribution facilities." (Am. Compl., ¶¶ 3-4.)  Second, Galderma claims "in the agreement with Galderma," Zamani "expressly consented to jurisdiction in Texas." (*Id.* at ¶ 7.)  Galderma makes the same jurisdictional allegations with respect to Germantown, grouping Zamani and Germantown together without any explanation.  (*See id.* at ¶¶ 3, 7.)

29.    As discussed below, the allegations in the Amended Complaint demonstrate that Galderma has failed to make a prima facie showing of either general or specific jurisdiction over Zamani.  Additionally, Galderma's misguided reliance on the forum selection clause in the CareConnect Terms and Conditions as a basis of personal jurisdiction over Zamani fails for the

reasons set forth below.  Zamani is not a party to the CareConnect terms and conditions and Germantown's participation in that program does not subject Zamani to personal jurisdiction in Texas.

**B.     Galderma Fails to Establish a Prima Facie Showing of General Jurisdiction Over Zamani**

30.     Galderma fails to allege any facts to meet the "high standard" to establish general jurisdiction. *See Johnston*, 523 F.3d at 610-11.  Galderma has not alleged that Zamani is domiciled in Texas.  Rather, Galderma incorrectly alleges that Zamani is domiciled in Maryland. (Am. Compl., ¶ 4.)  Zamani is, in fact, domiciled in the District of Columbia. (App. 003, ¶ 1.)  Zamani is not subject to general jurisdiction in Texas, or anywhere but the District of Columbia. *See Daimler*, 571 U.S. at 137.

31.     Likewise, Galderma has not alleged any other facts by which the Court could conclude that Zamani's contacts with Texas "are so continuous and systematic as to render [him] essentially at home in the forum."  *Id.* at 128.   Allegations that Zamani entered into a contract with Galderma, and purchased Galderma products, "*some of which* come from Texas distribution facilities," (Am. Compl., ¶¶ 3-4 (emphasis added)), even if taken as true, fall well short of continuous and systematic contact with Texas.   Such "vague and overgeneralized assertions that give no indication as to the extent, duration or frequency of contracts [that] are insufficient to support general jurisdiction," *Johnston*, 523 F.3d at 610.

32.     Further, the Fifth Circuit has emphasized that, in order to confer general jurisdiction, "[i]t is not enough ... [to] do business *with* Texas," but rather "a defendant must have a business presence *in* Texas."  *Johnston,* 523 F.3d at 611 (citation omitted) (emphasis original). Both the Fifth Circuit and the United States Supreme Court have held "[t]he mere purchase of goods from a state, even at regular intervals and in amounts that were not insubstantial, was not

11

enough to warrant the assertion of [general] jurisdiction." *See id.* at 610, 612 (citing *Helicopteros Nacionales de Columbia, SA. v. Hall*, 466 U.S. 408, 417-18 (1984)). Even when a nonresident has entered into lease agreements for telephone circuits and real property in Texas, earning millions of dollars a month in revenue from telephone calls made by Texas residents, the Fifth Circuit has held such activity to be insufficient to establish general jurisdiction. *See Access Telecom, Inc. v. MCI Telecomms., Corp.*, 197 F.3d 694, 717 (5th Cir. 1999).

33.     Unlike the defendant in *Access Telecom*, Zamani owns no property in Texas, has no Germantown office in Texas, has not negotiated or signed any contracts with Galderma in Texas, and has not purchased any products from Galderma in his individual capacity from a distributor in Texas. (App. 003-004, ¶¶ 6-8, 13-14, 16-17.) There is no basis for general jurisdiction over Zamani in Texas.

## C.     Galderma Fails to Establish a Prima Facie Showing of Specific Jurisdiction Over Zamani

34.     Galderma has also failed to allege a prima facie case of specific jurisdiction over Zamani in Texas, because none of Galderma's claims against Zamani arise from or are related to Zamani's contacts with the forum. Zamani's alleged ties to Texas are limited to allegations that he entered into a contract with Texas based entity (Galderma), and "purchas[ed] that Texas entity's products, some of which come from Texas distribution facilities." (Am. Compl., ¶¶ 3-4.) These jurisdictional allegations are exceptionally limited, and importantly, demonstrate no tie between Zamani, Texas, and Galderma's claims. Specific jurisdiction focuses on the relationship between the defendant, the litigation, and the forum, rather than the plaintiff's relationship with the forum. *See Walden*, 571 U.S. at 277, 283-84, and 287. Galderma's jurisdictional allegations fall well short of that mark.

12

35.     Each of Galderma's claims is based upon the same alleged wrong - the purported submission of "False Claims" for reimbursement under the "CareConnect Card program" - and asserts the same alleged loss – Galderma's purported payment of the alleged "False Claims."  (*See* Am. Compl., ¶¶ 14, 16, 18-19, 23-24, 26.)  Similarly, the allegation that Zamani contracted with Galderma is inaccurate and fails to establish specific jurisdiction because "merely contracting with a resident of the forum state does not establish minimum contacts."  *Moncrief Oil Int'l, Inc. v. OAO Gasprom*, 481 F.3d 309, 311 (5th Cir. 2007).  Galderma does not assert that the CareConnect Terms and Conditions were negotiated or executed in Texas—in fact, these Terms and Conditions were unilaterally drafted by Galderma and posted on its website and thus were not negotiated or signed by any party to this case. (*See* Am. Compl., ¶ 11; *see also* App. 005 ¶ 17.)

36.     Moreover, Galderma does not allege that Zamani made any of the purported "False Claims" in Texas.  *See Marathon Oil Co. v. A.G. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999) (finding that, absent evidence false statements were made at a meeting in Texas, there was an insufficient basis for personal jurisdiction to attach).  In fact, Galderma does not allege either the submission or payment of the purportedly "False Claims" as a basis for personal jurisdiction over Zamani at all. (Am. Compl., ¶¶ 4, 7.)  Galderma is aware that neither Germantown nor Zamani submitted any claims for reimbursement to Galderma in Texas, nor received any reimbursements from Galderma in Texas, under the CareConnect program.

37.     Instead, Galderma, in its Amended Complaint, states that it contracts with a third party "administrator," which it identifies as "McKesson," to run the CareConnect Card program. (Am. Compl., ¶ 23.)  The CareConnect Terms and Conditions state that the submission of claims under the program are "subject to the LoyaltyScript Terms and Conditions" and contains a hyperlink leading to a separate LoyaltyScript Agreement between McKesson's subsidiary,

"RxCrossroads," as "Administrator" and the participating "pharmacies" as parties.  (App. 023, ¶ 2; App. 024-027.)  Neither Galderma nor Zamani is alleged to be a party to the LoyaltyScript Agreement.  (*Id.*)  The LoyaltyScript Agreement provides detailed provisions regarding pharmacy participation, submission of claims under the program and the payment of claims. (*Id.* ¶¶ 1-2, 4.) The LoyaltyScript Agreement provides that (a) participating pharmacies must submit claims to the Administrator;  (b)  Administrator shall review, adjudicate and pay qualifying claims "in accordance with this Agreement"; and (3) Administrator has the unilateral authority to deny claims, delay payment and/or recoup any amounts incorrectly paid to pharmacies, as well as to terminate any pharmacy's participation in the program. (Id. ¶¶ 1-2, 12.)

38.     These details are critically important to the jurisdictional inquiry for two primary reasons.  First, they demonstrate that Galderma has deliberately set up a program in which it has no direct interaction with the pharmacy participants - Galderma itself neither receives claims from pharmacies, nor pays claims to pharmacies.  Zamani has confirmed that, as designed, even the Pharmacy (let alone Zamani) submitted no claims to Galderma, received no payment from Galderma, had no other interaction with Galderma under the program; and that any interactions under the CareConnect Card program were with the McKesson-owned "Administrator," RxCrossroads.  (App. 005-006, ¶¶ 18-22.)  Second, as set forth in the LoyaltyScript Agreement, RxCrossroads is located in Arizona. (App. 024)

39.     The only connection this dispute has with Texas is the fact that Galderma is located in Texas.  Controlling case law makes it clear that Plaintiff's location is insufficient to establish personal jurisdiction.  *See, e.g., Walden*, 571 U.S. at 285 ("[T]he plaintiff cannot be the only link between the defendant and the forum."); *Sangha*, 882 F.3d 96 at 103 (The "plaintiff's *own contacts*

with the forum [cannot] be used to demonstrate contacts by the defendant"; the defendant's "contacts with the state have to be purposeful 'and not merely fortuitous.'").

40.    In *Sangha*, the Fifth Circuit held the plaintiff failed to establish specific jurisdiction even though the "effect of [defendant's] intentional torts were felt" in Texas, based on allegations that had a far greater connection to Texas than those that exist here, including emails from defendant to Texas that "were targeted at a contract formed in Texas" and "concerned work to be performed in Texas." *Sangha,* 882 F.3d at 103. There is simply no connection between Zamani and Texas in relation to the claims in this case.  *See, e.g.*, *Burchfield v. Stein*, WL 318341, *6 (N.D. Tex. Feb. 27, 2002) ("[M]ere allegations of fraud by an out of state defendant without a showing of minimum contacts will not confer jurisdiction.").

**D**.     **Zamani is Not Subject to the Forum Selection Clause in the Terms and Conditions Because He is Not a Party to the Agreement.**

41.    Galderma also alleges that Zamani is subject to personal jurisdiction in Texas because, "in the agreement with Galderma, Defendants expressly consented to exclusive jurisdiction in Texas." (Am. Compl., ¶ 7.)  The referenced "agreement," is the CareConnect Terms and Conditions, (*see id.* ¶¶ 13, 28), which contains the following forum selection clause:

> Acceptance and participation in the Program and/or the use of this Card constitutes an agreement with Galderma in Texas and the transactions underlying the participation in the Program and use of this Card is performable for all purposes in Texas. By participating in the Program and using this Card, you agree that the transaction has a reasonable relationship to the State of Texas in that, among other things, this Card and the Program originated from the State of Texas and Galderma will perform a substantial part of its respective obligations in the State of Texas. It is agreed that the exclusive venue for any dispute arising out of participation in the Program and/or this Card is a state or federal court of competent jurisdiction in Tarrant County, Texas. By participating in Program and using this Card, you irrevocably and unconditionally submit to the exclusive jurisdiction of a state or federal court in Tarrant County, Texas.

(App. 023, ¶ 3.)  Galderma's reliance on this provision as a basis for personal jurisdiction over Zamani is misplaced as Zamani is not a party to the CareConnect Terms and Conditions agreement.

42.     Federal law governs the enforceability of forum selection clauses.  *Haynsworth v. The Corporation*, 121 F.3d 956, 962 (5th Cir. 1997).  "Personal jurisdiction can be waived by an enforceable forum selection clause in which <u>the parties consent</u> to personal jurisdiction in a specified forum."  *Sunday Riley Modern Skin Care, L.L.C. v. Maesa*, 2013 WL 5231860, *7 (S.D. Tex. Sept. 12, 2013) (emphasis added).  "A party who <u>signs a contract</u> with a forum selection clause has either consented to personal jurisdiction or waived the requirements for personal jurisdiction in a selected forum where the clause was obtained <u>through freely negotiated agreements</u> and is not unreasonable or unjust."  *Id*. (emphases added) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462,472 n.14 (1985)).

43.     A forum selection clause will not, however, bind a party defendant who is not a party to the agreement.  As the Fifth Circuit explained, "[u]nder the general principles of contract law, it is axiomatic that courts cannot bind a non-party to a contract, because that party never agreed to the terms set forth therein."  *Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 652 (5th Cir. 2004) (citation omitted); *see also EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) ("It goes without saying that a contract cannot bind a nonparty.").  "Thus, *under this well recognized rule, because [plaintiff is not a party to the [defendants'] contract he is not bound by the forum selection clause in the [contract]*."  *Adams*, 364 F.3d at 652 (emphasis added); *see also Sunday Riley*, 2013 WL 5231860 at *7 (holding that a forum selection clause in a contract between other parties would not bind plaintiff as "a nonsignatory to the latter contract").  Zamani is not bound by the forum selection clause.

**E.     The Corporate/Fiduciary Shield Doctrine Precludes Personal Jurisdiction over Zamani Based on Transactions Conducted by and for Germantown.**

44.     Finally, the corporate or fiduciary shield doctrine prevents Zamani from being subject to personal jurisdiction in Texas based on the acts or omissions of Germantown.  "[T]he

16

general rule is that jurisdiction over an individual <u>cannot be predicated upon jurisdiction over a</u> <u>corporation</u> . . . ." *Stuart,* 772 F.2d at 1197 (emphasis added).  The "fiduciary-shield doctrine," states "that an individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual though the state has in personam jurisdiction over the corporation . . . ." *Id.*; *accord Burchfield*, 2002 WL 318341, at *6 (under the fiduciary shield doctrine, corporation "contacts" with Texas "may not be imputed to the individual defendants in order to create jurisdiction over them."); *Organic Metals v. Aquasium Techs., Ltd.*, 2004 WL 718960, *3 (N.D. Tex. Apr. 2, 2004).

45.     Here, Galderma has pleaded no facts to support its assertion that both Germantown and Zamani are parties to the CareConnect Terms and Conditions, and that both are subject to the forum selection clause. (Am. Compl., ¶¶ 27-30.)  Galderma does not allege that Zamani is identified as a party in the CareConnect Terms and Conditions, or that he signed the document in any capacity or otherwise indicated his assent to be personally bound by these terms. Moreover, the CareConnect Terms and Conditions themselves make clear this is not the case. (*See* App. 021-023.)  The language of the forum selection clause further indicates that, at most, it binds the pharmacy that "participat[es] in the Program." (*Id.*)  The separate LoyaltyScript Agreement, which governs the submission and payment of claims under the program, is also expressly limited to Administrator (RxCrossroads) and participating "pharmacy" as parties, not its owners or pharmacists.  (*See* App. 024.)

46.     Additionally, Galderma's factual allegations further undermine any inference that Zamani is a party to the CareConnect Terms and Conditions.  For example, Galderma alleges:

- "Among other things, the Pharmacy and Zamani purchase and sell Galderma products. In connection with those sales, the Pharmacy and Zamani participated in the Program by using the CareConnect Card and submitting reimbursement claims to Galderma's third-party

administrator of the Program for Galderma to pay. Accordingly, the Pharmacy and Zamani agreed to and accepted the Program's Terms and Conditions." (Am. Compl., ¶ 13.) Compl.,

- "With every reimbursement claim, the Pharmacy and Zamani represented to Galderma the following occurred: (a) the *Pharmacy* received a valid prescription for a Galderma prescription product; (b) the patient and/or Defendants used the CareConnect Card; (c) the Galderma product was covered by the CareConnect Card; (d) the Defendants adjudicated the patient's insurance and collected any co-pay from the patient; and (e) Zamani, as licensed pharmacist, filled and dispensed the prescribed Galderma product to the patient" (*Id.* at ¶ 14 (emphasis added).)

- "Since January 1, 2017, the Pharmacy and Zamani have participated in the Program. Defendants submitted approximately 7,568 Claims against Galderma's CareConnect Card." (*Id.* at ¶ 16.)

47.     Each of these factual allegations make clear, as they must, that the Pharmacy is the only "participant in the Program," and that any alleged action taken by Zamani was done on behalf of the Pharmacy.  (*See id.* at ¶¶ 13-14, 16.)  It is illogical for Galderma to conclude from the allegations that "the Pharmacy and Zamani purchase and sell Galderma products," that somehow both Zamani and Germantown "agreed to and accepted the Program's Terms and Conditions." (*Id.* ¶ 13.) Moreover, there is no allegation Zamani submitted any claims under the CareConnect Card in his individual capacity, or personally received any money from Galderma or otherwise. (Am. Compl., ¶ 12.)  The fact that Zamani held the position of supervising pharmacist, standing alone does not create the minimum contacts necessary to subject him to personal jurisdiction in Texas, nor does it make him personally liable.

48.     To assert personal jurisdiction over Zamani in his individual capacity would be to do so solely because he is the owner of the Pharmacy and allegedly acted on its behalf.  Such a far-flung exercise of personal jurisdiction is precluded by the fiduciary-shield doctrine, and principles of corporate law. *See Stuart*, 772 F.2d at 1197; *see also TecLogistics, Inc. v. Dresser-Rand Group, Inc.*, 527 S.W.3d 589, 596 (Tex. App.-Houston [14th Dist.] 2017, no pet.) ("[A] corporation is a separate legal entity from its shareholders, officers, and directors, and as a general

rule, the actions of a corporate agent on behalf of the corporation are deemed the corporation's acts." (internal quotation marks omitted)).

## VI.    CONCLUSION

49.    Zamani preserved his objection to personal jurisdiction in his Original and Amended Answers.  Galderma has failed to allege a prima facie showing of general or specific personal jurisdiction.   The corporate/fiduciary shield doctrine prohibits Galderma from establishing personal jurisdiction over Zamani based on transactions conducted by and for the benefit of his company, Germantown.

50.    Zamani respectfully asks this Court to reject Galderma's conclusory allegations of personal jurisdiction, and to dismiss Zamani from this matter for lack of personal jurisdiction pursuant Rule 12(b)(2) of the Federal Rules of Civil Procedure.

Respectfully submitted,

*/s/ Daniel C. Steppick*
Daniel C. Steppick
State Bar No. 00791732
Dan@LacyMalone.com
Zshoná A. Workman
State Bar No. 24099397
Zshona@LacyMalone.com
**LACY MALONE STEPPICK**
**RYDER & MENEFEE, PLLC**
303 Main Street, Suite 200
Fort Worth, Texas 76102
Telephone:     (817) 349-8409
Facsimile:     (817) 349-8006
**ATTORNEYS FOR DEFENDANTS**

19

## CERTIFICATE OF CONFERENCE

I hereby certify that on the 29th day of September, 2020, I communicated with David Drez, counsel for Plaintiff in this matter, regarding the merits of this Motion.  Mr. Drez advised that Plaintiff is opposed to the relief requested herein.

By:  */s/ Daniel C. Steppick*                         


## CERTIFICATE OF SERVICE

On this 29th day of September, 2020, the foregoing document was submitted to the clerk of court for the U. S. District Court, Northern District of Texas, using the electronic case filing system of the court.  I hereby certify that I have served all counsel of record electronically or by any other manner authorized by the Federal Rules of Civil Procedure, as follows:

WICK PHILLIPS GOULD & MARTIN, LLP
100 Throckmorton Street, Suite 1500
Fort Worth, Texas 76102
> *Via E-mail*
> David J. Drez III
> david.drez@wickphillips.com
> *Via E-mail*
> Lauren K. Drawhorn
> lauren.drawhorn@wickphillips.com
> *Via E-mail*
> Schyler P. Parker
> schyler.parker@wickphillips.com

By:  */s/ Daniel C. Steppick*