# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | | |
|---|---|---|
| **GALDERMA LABORATORIES LP,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No.  4:20-cv-00185-P** |
| | § | |
| **GERMANTOWN PROFESSIONAL** | § | |
| **PHARMACY, LLC, et al.,** | § | |
| **Defendants.** | § | |

## <u>ORDER</u>

Before the Court is Defendants Germantown Professional Pharmacy LLC's ("Germantown") and Hossein Zamani's ("Zamani") Motion to Dismiss for Lack of Personal Jurisdiction over Zamani. ECF No. 36. Having considered the motion, briefing, and applicable law, the Court finds that the Motion to Dismiss should be and hereby is **GRANTED** as to Galderma's claims against Zamani. Accordingly, Galderma's claims against Zamani are **DISMISSED without prejudice**.

## BACKGROUND[1]

Plaintiff Galderma Laboratories LP ("Galderma") filed this suit against Defendants on February 26, 2020. Am. Comp., ECF No. 30. Galderma is a Texas limited partnership, Germantown is incorporated and headquartered in Maryland, and Zamani is an individual

---

[1]Unless otherwise noted, the facts in this section are taken from Plaintiff's Amended Complaint, as the Court must take all uncontroverted allegations as true.  *See Abramov v. Otis Elevator Co.*, No. 3:11-CV-440-D, 2011 WL 5081560, at *2 (N.D. Tex. Oct. 25, 2011) (quoting *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001) (per curiam)).

who is a resident and citizen of Maryland. *Id.* at 2. Jurisdiction in this Court is predicated on diversity as there is complete diversity among the parties and the amount in controversy exceeds $75,000. *Id.*

Galderma is a skin care company located in Fort Worth, Texas that manufactures and sells both over-the-counter and prescription products. *Id.* at 4. Galderma offers a CareConnect Patient Savings Card that allows patients to purchase Galderma products for little to no co-pay at participating pharmacies. *Id.* When a patient presents his or her prescription for the Galderma product, insurance (if any), and the CareConnect Card, the pharmacy dispenses the Galderma product to the patient. *Id.* Upon dispensing the Galderma product to the patient, the patient pays the pharmacy a discounted co-pay set by the patient's insurance provider and Galderma's CareConnect Card's Terms and Conditions. Following the sale, the pharmacy seeks reimbursement from the insurance provider and reimbursement from Galderma. *Id.* Galderma reimburses the pharmacy for the difference between the price the pharmacy purchased the product for and the amount the pharmacy received from both the patient and the insurance company. *Id.*

According to Galderma, Zamani is Germantown's supervising pharmacist. *Id.* at 5. Galderma alleges that Germantown sells Galderma products and utilizes the reimbursement plan. *Id.* In selling Galderma products and participating in the reimbursement plan, Galderma claims that Germantown and Zamani agreed to and accepted the CareConnect Card's Terms and Conditions that allow participants to request reimbursement only when "(a) the Pharmacy received a valid prescription for a Galderma prescription product; (b) the patient and/or the Defendants used the CareConnect Card; (c)

2

the Galderma product was covered by the CareConnect Card; (d) the Defendants adjudicated the patient's insurance and collected any co-pay from the patient; and (e) Zamani, as licensed pharmacist, filled and dispensed the prescribed Galderma product to the patient." *Id.* The CareConnect Card's Terms and Conditions contained a forum selection clause which designated Tarrant County, Texas as the exclusive venue for disputes arising from its use. Mt. to Dismiss ("MTD") Resp. App. at 011, ECF No. 38.

Galderma alleges that since January 1, 2017, Zamani, as supervising pharmacist, submitted 7,568 reimbursement claims against the CareConnect Card, despite only purchasing 613 Galderma products for sale. Am. Comp. at 7. According to Galderma, this resulted in it paying Germantown for approximately 6,955 fraudulent claims. *Id.* Following the discovery of the "suspicious activity," Galderma requested that "Defendants," the term used by Galderma to describe both Germantown and Zamani, validate Germantown's purchases of Galderma products during the aforementioned time frame, address the anomalies that Galderma had identified with regards to the reimbursement requests, and return any wrongly dispersed funds. *Id.* Galderma states that Defendants ignored the request for clarification, refused to return any wrongfully dispersed funds, and continued submitting "false claims." *Id.*

Galderma filed the instant action with claims of fraud, breach of the CareConnect Card's Terms and Conditions, and money had and received. *Id.* at 8–10. Galderma also seeks reimbursement of its attorney's fees. *Id.* at 11. Defendants filed a Motion to Dismiss for Lack of Personal Jurisdiction over Zamani. ECF No. 36. Galderma responded, (ECF No. 37), Defendants replied, (ECF No. 39), and the motion is now ripe for review.

## THE LEGAL STANDARD FOR 12(b)(2)

In considering a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the court must resolve all undisputed facts submitted by the plaintiff, as well as any facts contested by affidavit, in favor of jurisdiction if the plaintiff can establish it through a prima facie showing. *Luv N' Care Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006). A common method of consenting to personal jurisdiction is through a contractual forum selection clause. *See, e.g.*, *CDx Holdings Inc. v. Goldenson*, No. 3:12-CV-394-N-BH, 2012 WL 13018985, at *7 (N.D. Tex. Oct. 26, 2012) ("The exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice where the defendant consented to jurisdiction in Texas, and this consent alone is sufficient to satisfy the fundamental fairness of the personal jurisdiction analysis." (citing *American Airlines, Inc. v. Rogerson ATS*, 952 F. Supp. 377, 381 (N.D. Tex. 1996))); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n.14 (1985) ("[P]arties frequently stipulate in advance to submit their controversies for resolution within a particular jurisdiction. Where such forum-selection provisions have been obtained through freely negotiated agreements and are not unreasonable and unjust their enforcement does not offend due process.") (cleaned up).

Forum selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." *Braspetro Oil Services Co. v. Modec (USA), Inc.*, 240 F. App'x 612, 615 (5th Cir. 2007); *see also, Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 441 (5th

Cir. 2008) ("Under federal law, forum-selection clauses are presumed enforceable, and the party resisting enforcement bears a 'heavy burden of proof.'"). A forum selection clause may be considered unreasonable if

> (1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement will for all practical purposes be deprived of his day in court because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state.

*Haynsworth v. The Corp.*, 121 F.3d 956, 963 (5th Cir. 1997). To qualify as unreasonable, the fraud and overreaching must be specific to the forum selection clause, *id.*, and the party resisting the forum selection clause's application has a "heavy burden of proof." *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 17 (1972).

Forum selection clauses, even those in adhesive contracts, are generally enforced. *See, e.g.*, *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991) (enforcing a forum selection clause in an adhesive contract printed on the back of a cruise line's ticket). The mere fact that a forum selection clause was in an adhesive contract is not, in and of itself, enough to deem it unreasonable. *See, e.g.*, *Burbank v. Ford Motor Co.*, 703 F.2d 865, 867 (5th Cir. 1983) ("That the [provision] was part of an adhesion contract is not, standing alone, reason to cast it aside."); *DSA Promotions, LLC v. Vonage Amer. Inc.*, No. 3:17-CV-3055-D, 2018 WL 1071278, at *5 (N.D. Tex. Feb. 27, 2018) ("Courts regularly uphold forum selection clauses as part of contracts of adhesion and not subject to negotiation— even when enforced against a relatively unsophisticated party."); *Rassoli v. Intuit, Inc.*, No. H-11-2827, 2012 WL 949400, at *3 (S.D. Tex. 2012) (citing *Haynsworth*, 121 F.3d at 963);

*Abramson v. Am. Online*, 393 F. Supp. 2d 438, 442 (N.D. Tex. 2005) (holding that including a boilerplate forum-selection clause in contract of adhesion did not amount to overreaching).

However, the fiduciary-shield doctrine holds that an individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual though the state has in personam jurisdiction over the corporation. *Stuart v. Spademan*, 772 F.2d 1185, 1197 (5th Cir. 1985). While the general rule is that jurisdiction over an individual cannot be predicated upon jurisdiction over a corporation, courts have recognized exceptions to this rule when the corporation is the alter ego of the individual or when the individual commits fraud. *Id.* In the Fifth Circuit, mere allegations of fraud by an out-of-state defendant without a showing of minimum contacts will not confer jurisdiction and activities conducted by a defendant in the course of performing duties for a corporation are not relevant and should not be considered as grounds for imposing jurisdiction over them in Texas. *See id.*; *see also Southern Bleacher Co., Inc. v. Husco, Inc.*, No. 7:01-CV-009-R 2001 WL 497772, at *5 (N.D. Tex. May 7, 2001).

## ANALYSIS

Galderma asserts that the Court has personal jurisdiction over Zamani because (1) he personally submitted the reimbursement requests, thereby agreeing to the Terms and Conditions of the CareConnect Card and the ability to be sued under them, and (2) because under Texas law, the registered "pharmacist-in-charge" can be held responsible for the pharmacy's activities. *See generally* MTD Resp. However, under the fiduciary shield

6

doctrine, Zamani cannot be held liable as an individual for actions he takes on behalf of a corporate entity he represents.

According to Galderma, by submitting the reimbursement requests, Zamani individually entered a contract with Galderma under the Terms and Conditions of the CareConnect Card. *Id*. at 3. As noted above, the Terms and Conditions include a forum selection clause that designates Texas as the forum for litigation. MTD Resp. App. 011. Galderma argues that should the Court not find that Zamani is subject to the forum selection clause, he should nonetheless be found to have sufficient minimum contacts with Texas by submitting numerous reimbursement requests to Galderma, a Texas-based company, that would justify personal jurisdiction over Zamani. *See id* at 12.

In its Complaint, Galderma alleges: (1) Zamani is a resident and citizen of Maryland and is engaged in business in Texas by contracting with a Texas entity and purchasing that Texas entity's products, some of which come from Texas distribution facilities; (2) Zamani is the pharmacist in charge of Germantown; (3) because the Pharmacy sells Galderma products and claims reimbursement from Galderma under the CareConnect Card, it and Zamani agreed to and accepted the CareConnect Card's Terms and Conditions; and (4) Zamani submitted on behalf of the pharmacy 7,568 Claims against Galderma's CareConnect Card, but had only purchased 613 Galderma products to dispense. Am. Comp. at 5–7. The rest of Galderma's allegations against Zamani are presented under the term "Defendants" which Galderma uses to describe both Germantown and Zamani jointly.

Each action described by Galderma involves Zamani acting "on behalf of" or in his role as an agent of Germantown. Galderma makes no allegation and provides no proof that

Zamani committed any of the alleged fraudulent activity in his own individual capacity, but rather clearly acknowledges that Zamani always acted on behalf of and in connection with Germantown. These allegations are insufficient to defeat the fiduciary shield doctrine. Galderma's allegations against Zamani do not show that his behavior falls within the fraud exception to the doctrine. Because an individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual despite having jurisdiction over the corporation, the Court concludes that it lacks personal jurisdiction over Zamani.

Because Galderma alleges Zamani acted on behalf of Germantown when committing the alleged bad acts, and because the fiduciary shield doctrine protects individuals who act on behalf of a corporation from being subject to personal jurisdiction in their individual capacity, the Court finds that it lacks personal jurisdiction over Zamani. Therefore, Defendants' Motion to Dismiss as to Zamani should be and hereby is **GRANTED,** and Galderma's claims against him are **DISMISSED without prejudice.**

## CONCLUSION

Because the Court finds that it does not have personal jurisdiction over Zamani, the Court finds that Defendant's Motion to Dismiss (ECF No. 36) should be and hereby is **GRANTED** as to Galderma's claims against Zamani. Accordingly, Galderma's claims against Zamani are hereby **DISMISSED without prejudice.**

**SO ORDERED** on this **23rd day** of **November, 2020.**

Mark T. Pittman
UNITED STATES DISTRICT JUDGE

8